UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                                       :

UNITED STATES OF AMERICA,          :

      -v-                                       :
                                                      :          22 Cr. 61 (JPC)
UNIQUE CHRISTOPHER,              :
                                                      :          OPINION AND
                            Defendant.          :          ORDER
                                                                        :
----------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Defendant Unique Christopher, a federal inmate serving a combined sixty-six-month sentence for carrying a firearm in relation to a drug trafficking offense in this case and for violating the conditions of his supervised release in a prior case, moves for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i). Christopher argues that extraordinary and compelling reasons exist for his early release citing his grandmother's ailing health and his rehabilitation while in custody. In opposing early release, the Government disputes that Christopher has established extraordinary and compelling reasons and further maintains that the relevant factors under Section 3553(a) counsel against a sentence reduction. For the reasons that follow, the Court denies Christopher's motion.

### I. Background[1]

      In September 2015, Christopher was arrested for participating in a racketeering conspiracy and was charged in *United States v. Capers et al.*, No. 15 Cr. 607 (WHP) (S.D.N.Y.). PSR ¶ 24. Christopher was a member of the Leland Avenue Crew, a street gang which distributed crack on

---

[1] The following description of Christopher's offense conduct is based on information in the Revised Presentence Investigation Report in *United States v. Christopher*, No. 22 Cr. 61 (JPC) (S.D.N.Y.), Dkt. 26 ("PSR").

Leland Avenue in the Bronx. *Id.* Working closely with other Leland Avenue Crew members, Christopher was responsible for distributing at least 280 grams of cocaine base and possessed a firearm in relation to his drug trafficking. *Id.* On October 13, 2016, Christopher pleaded guilty before the Honorable William H. Pauley III to Count One of the Indictment, which charged a racketeering conspiracy from 2012 through September 2015, in violation of 18 U.S.C. § 1962(d). *Id.* ¶ 24; *see United States v. Capers et al.*, No. 15 Cr. 607 (WHP) (S.D.N.Y.), Dkt. 125 (guilty plea transcript); *id.*, Dkt. 1 (Indictment). On February 15, 2017, Judge Pauley sentenced Christopher to fifty-two months' imprisonment, followed by five years of supervised release. PSR ¶ 24; *see United States v. Capers et al.*, No. 15 Cr. 607 (WHP) (S.D.N.Y.), Dkt. 199 (judgment of conviction); *id.*, Dkt. 210 (sentencing transcript). Christopher's supervised release commenced in March 2020. PSR ¶ 24. On July 6, 2021, 15 Cr. 607 was reassigned to the undersigned, making the undersigned responsible for handling any issues with respect to Christopher's supervised release.

On January 19, 2022, officers in an unmarked police car patrolling in the Bronx pulled over a livery car after observing the backseat passenger, who was Christopher, not wearing a seat belt. *Id.* ¶¶ 12-13. Upon learning that Christopher was on supervision, officers directed Christopher to step out of the vehicle. *Id.* ¶ 14. As Christopher stood, an officer observed what appeared to be a weighted bulge in Christopher's jacket, against which Christopher was holding his arm. *Id.* The officer asked Christopher whether he possessed any weapons, to which Christopher did not respond. *Id.* The officer frisked Christopher and discovered a .45-caliber Kahr Arms semi-automatic pistol, which was loaded with six cartridges, approximately 200 plastic vials containing crack cocaine, and approximately 300 glassine envelopes containing a mixture of heroin and fentanyl. *Id.*; *see also* Dkt. 28 ("Sentencing Tr.") at 6:22-7:17. Christopher was arrested and, on

January 21, 2022, he was charged in this District in a criminal complaint with offenses relating to unlawfully possessing a firearm and distributing narcotics. *See* Dkt. 1.

On January 31, 2022, Christopher was indicted by a grand jury with three counts: (1) knowingly possessing a firearm, which was in and affecting interstate and foreign commerce, following a felony conviction, in violation of 18 U.S.C. §§ 922(g) and 2; (2) possessing with the intent to distribute controlled substances, specifically cocaine and fentanyl, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); and (3) knowingly using and carrying a firearm during and in relation to the drug trafficking crime in Count Two, and possessing a firearm in furtherance of that crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Dkt. 3. Because Christopher was on supervised release for his racketeering conspiracy conviction in 15 Cr. 607 at the time of his January 19, 2022 arrest, the Probation Department filed a violation report with seven specifications in that case. On June 30, 2022, Christopher pleaded guilty in 22 Cr. 61 pursuant to a plea agreement to carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and admitted to committing the seven supervised release violations in 15 Cr. 607.

On October 21, 2022, the Court sentenced Christopher on both the Section 924(c)(1)(A)(i) conviction in 22 Cr. 61 and the supervised release violations in 15 Cr. 607. Section 924(c)(1)(A)(i) sets a minimum term of imprisonment of sixty months, which also was Christopher's range under the United States Sentencing Guidelines. *See* Sentencing Tr. at 9:11-10:11; PSR ¶¶ 21-22, 70. The Court first sentenced Christopher in 22 Cr. 61 to sixty months' imprisonment, followed by three years of supervised release. Sentencing Tr. at 18:25-19:5. Turning to the violations of supervised release in 15 Cr. 607, the Court determined a Guidelines range of 24 to 30 months' imprisonment. *Id.* at 29:4-20. After considering the factors outlined in 18 U.S.C. § 3553(a) and

the sixty-month sentence imposed in 22 Cr. 61, the Court revoked Christopher's supervised release in 15 Cr. 607 and imposed a term of six months' imprisonment for the supervised release violations to run consecutive to the sentence in 22 Cr. 61, for a total custodial term of sixty-six months. *Id.* at 47:13-22.

On January 17, 2024, Christopher filed an administrative request for compassionate release with the Bureau of Prisons ("BOP"), citing inadequate medical care for his asthma and his grandmother's need for a caretaker as extraordinary and compelling circumstances warranting release. *See* Dkt. 35 ("Opposition"), Exh. C ("BOP Request"). On February 6, 2024, the BOP denied the request, determining that Christopher's medical record indicated he was being adequately treated for asthma and that he had provided no evidence to show his grandmother needed a caretaker or that no alternative family members could provide care to her. *See id.*, Exh. D.

On August 30, 2024, Christopher moved before this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing his need to serve as a caretaker for his grandmother as well as his rehabilitation. *See* Dkt. 32 ("Motion"). The Government opposed Christopher's motion on September 30, 2024. Dkt. 35. Christopher is currently incarcerated at the Federal Correctional Institution in Berlin, New Hampshire, with a projected release date of December 15, 2026. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited November 7, 2024).

## II.  Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant who has exhausted his or her administrative remedies may subsequently move a federal district court for compassionate release or reduction of his or her sentence. That statute provides, in pertinent part, that the court "may reduce the term of imprisonment . . . , after considering the factors set forth in

section 3553(a) to the extent that they are applicable, if it finds that . . . (i) extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

As the moving party, Christopher "bears the burden of showing that the circumstances warrant a sentence reduction." *United States v. Sellick*, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022); *accord United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *United States v. Phillibert*, 557 F. Supp. 3d 456, 458-59 (S.D.N.Y. 2021). In other words, Christopher must show that: (1) he has exhausted his administrative remedies; (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the applicable sentencing factors, on balance, do not cut against such reduction. *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *2 (2d Cir. Apr. 12, 2024).

### III. Discussion

#### A. Extraordinary and Compelling Reasons

Congress did not define extraordinary and compelling reasons for a sentence reduction. Rather, it instructed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Before November 1, 2023, that guidance—which was set forth at Section 1B1.13 and its commentary and by its terms was directed only at motions brought by the BOP—outlined three categories of extraordinary and compelling reasons (the defendant's medical condition, the defendant's age, and family circumstances), as well as, as determined by the Director of BOP, an extraordinary and compelling reason other than, or in combination with, the identified three reasons. *See* U.S.S.G. § 1B1.13, cmt. n.1 (U.S. Sent'g

Comm'n 2021); *see generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255-56 (effective Nov. 1, 2023).  In deciding defendant-initiated motions, district courts in the Second Circuit were permitted to consider the Commission's guidance, but—given that Section 1B1.13 at the time, as written, applied only to BOP-initiated motions—courts were not required to do so.  *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("[I]f a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it.").  Instead, courts were free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.* at 237.

Effective November 1, 2023, the Sentencing Commission amended Section 1B1.13 to update its policy statement to encompass motions brought by defendants.  U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."); *see generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,254 (effective Nov. 1, 2023).  The amendment expands the categories of circumstances considered "extraordinary and compelling," instructing courts to consider not only the defendant's medical circumstances, age, and family circumstances, but also whether the defendant is or has been a victim of abuse or received an unusually long sentence under certain circumstances with a change in the law. U.S.S.G. § 1B1.13(b)(1)-(4), (6).  Section 1B1.13 also now allows courts to consider any other circumstance or combination of circumstances that, either themselves or together with the reasons identified in subsection (b)(1) through (b)(4) (*i.e.*, medical circumstances, age, family circumstances, and victim of abuse), rise to the level of gravity of those four reasons.  *Id.* § 1B1.13(b)(5).  It further adds specific guidance on the permissible consideration of non-

retroactive changes in the law, *id.* § 1B1.13(c), and provides that the defendant's rehabilitation may be considered as a factor in the "extraordinary and compelling" inquiry, although it cannot serve as the sole basis for reducing a sentence, *id.* § 1B1.13(d).  *See generally United States v. Mendez-Rojas*, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *2-4 (S.D.N.Y. Sept. 30, 2024) (outlining these background principles).[2]

Christopher argues that a sentence reduction is warranted because he could serve as the caretaker for his grandmother, who has colon cancer, Motion at 2-3, and because of his rehabilitation while incarcerated, *id.* at 3-4.[3]  These grounds fall short of extraordinary and compelling reasons that warrant a sentence reduction.

**1. Christopher's Role as a Caregiver for his Grandmother**

Starting with Christopher's first proffered basis for compassionate release, Christopher contends that "his grandmother is suffering from [c]olon cancer and has been in and out of the hospital due to this diagnosis," and that she "is [in] desperate need of a caregiver," particularly after Christopher's mother passed away while he was incarcerated. *Id.* at 1-2.  Christopher explains that "[a]t present time [his grandmother] is suffering the aftermath of a new hospitalization that included suffering from pneumonia.  She is unable to walk and needs constant care which she is

---

[2] Recent Second Circuit authority suggests that the standard articulated in *Brooker*—which allowed district judges to "consider the full state of extraordinary and compelling reasons that an imprisoned person might bring before them," 976 F.3d at 237—continues to apply following the revision to Section 1B1.13.  *See United States v. Fernandez*, 104 F.4th 420, 431 (2d Cir. 2024); *United States v. Edwards*, No. 23-6139-cr, 2024 WL 3466550, at *2 (2d Cir. July 19, 2024).  Applying the terms most favorable to Christopher under either standard, the outcome would be the same: he has not offered extraordinary and compelling reasons warranting a sentencing reduction, for reasons that follow.

[3] Before the BOP, Christopher contended that compassionate release was warranted on the basis of his asthma.  *See* BOP Request.  Christopher does not make that argument in his present motion and, in any event, the Court agrees with the BOP that Christopher's medical records (which are filed under seal and the Court has reviewed) do not support the contention that his asthma warrants relief under Section 3582(c)(1)(A)(i).

7

not getting. [Christopher] wants to be there for his grandmother and has the training and capabilities to help her through this trying time period of her life." *Id.* at 3. On the last point, Christopher maintains that he "is a trained caregiver and he could easily fill that role for his grandmother." *Id.* at 2-3.

The Court accepts Christopher's representation of his grandmother's condition and expresses its sympathy, but these circumstances do not constitute an extraordinary and compelling reason to warrant compassionate relief. "[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks omitted). Christopher has provided no evidence indicating that he is his grandmother's only potential caregiver, instead "rel[ying] solely on his own unsubstantiated assertions . . . and offer[ing] no showing that there is a dearth of other family members or individuals that could provide any needed services to his" grandmother. *United States v. Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021).

Indeed, Christopher's application for relief before the BOP revealed that he has a sister, aunts, uncles, and cousins who reside in the New York area. *See* BOP Request. These individuals presumably would be able to help his grandmother with her needs. While the Court acknowledges Christopher's prior work as a home health aide, PSR ¶ 58, he does not explain why that past employment would uniquely qualify him among all of his family members to aide his grandmother. Moreover, on November 28, 2023, Christopher informed the BOP that his grandmother was at the time "in a nursing home," Opposition, Exh. E at 161, a facility which presumably is equipped to handle his grandmother's health needs. In sum, Christopher has not shown that his grandmother's

8

condition constitutes an extraordinary and compelling circumstance warranting relief. *See, e.g.*, *Lindsey*, 2021 WL 37688, at *3 (collecting cases denying compassionate relief in similar circumstances); *United States v. Bennett*, No. 15 Cr. 95 (JPC), 2022 WL 3445349, at *2 (S.D.N.Y. Aug. 17, 2022) (same).

### 2. Rehabilitation

Christopher also argues that his rehabilitation while in custody constitutes an extraordinary and compelling circumstance. *See* Motion at 3-4. While rehabilitation can factor into the compassionate release analysis, Christopher "cannot . . . rely on rehabilitation alone as a basis to justify reduction of his sentence." *United States v. Nguyen*, No. 03 Cr. 734 (JPC), 2023 WL 8368855, at *7 (S.D.N.Y. Dec. 4, 2023) (citing 28 U.S.C. § 994(t) and U.S.S.G. § 1B1.13(d)); *see also United States v. Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) (denying compassionate release on the basis of rehabilitation alone even where the inmate had a near flawless disciplinary record over twenty-seven years of incarceration). In addition to this obstacle, Christopher's purported rehabilitation does not support a conclusion that his release is justified for two further reasons.

First, Christopher did not raise his supposed rehabilitation before the BOP, *see generally* BOP Request, and this failure to exhaust precludes relief under 18 U.S.C. § 3582(c)(1)(A). Although "this exhaustion requirement is not a jurisdictional limitation on a court's power to consider an inmate's motion for compassionate release," it is still a claim-processing rule that the Government has invoked in this proceeding. *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021); *see* Opposition at 7.[4]

---

[4] The Court notes that, to the extent Christopher is separately seeking compassionate release on the basis of his mother's death while he has been incarcerated, *see* Motion at 2, he similarly failed to exhaust that argument before the BOP, *see generally* BOP Request.

9

Second, even were the Court to consider the merits of Christopher's rehabilitation argument, his prison record unfortunately tells a different story. Christopher has sustained multiple disciplinary infractions, two of which involved assaulting other inmates. *See* Opposition, Exh. A. While the Court is pleased that Christopher has taken advantage of certain opportunities available to him while incarcerated, which the Court also noted at sentencing, *see* Sentencing Tr. at 18:19-21, Christopher's infractions do not demonstrate successful rehabilitation. *See United States v. Rivera*, No. 89 Cr. 346 (LAP), 2021 WL 5235093, at *4 (S.D.N.Y. Nov. 9, 2021) (explaining that disciplinary infractions involving incidents of violence "hardly betokens a person who is rehabilitated and ready to return to a law-abiding life" and instead "disqualifies th[at] Defendant from demonstrating that he will not be a threat to public safety if he were released"); *United States v. Tran*, No. 90 Cr. 1019 (RPK), 2022 WL 7132195, at *3 (E.D.N.Y. Oct. 12, 2022) (noting that a record of disciplinary infractions "suggest[s] strongly that [the movant] has not, in fact, rehabilitated himself"). Christopher's record of violent disciplinary infractions while serving his sentence undercuts any appeal to rehabilitation in this case.

\* \* \*

Accordingly, Christopher has failed to establish "extraordinary and compelling reasons" to warrant his early release.

### B.   Section 3553(a) Sentencing Considerations

Even if Christopher had established extraordinary and compelling reasons that merit an early release, the applicable Section 3553(a) factors weigh heavily against granting that relief. As noted, Section 3582(c)(1)(A) only allows for compassionate release "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A); *see Raposo*, 2024 WL 165195, at *9 (explaining that after a movant establishes an extraordinary and compelling reason meriting

release, the court considers the Section 3553(a) factors). These include, among other identified factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Beginning with the nature and circumstances of the offense, the conduct in 22 Cr. 61 was particularly serious. Christopher was arrested while possessing a loaded .45-caliber semi-automatic pistol along with crack cocaine and a heroin/fentanyl mixture, with the drugs packaged in a manner consistent with sale and distribution. PSR ¶¶ 12-15. Carrying a firearm in relation to drug trafficking is highly dangerous conduct that places the public at significant risk. *See* Dkt. 15 (guilty plea transcript) at 25:8-9 ("And I possessed a gun, the firearm, to protect the narcotics."), 26:18-27:7 (admitting that he intended to share the narcotics he possessed "with other people" and that he had the firearm to prevent being robbed, explaining "recently [he] was robbed"). In addition to this conduct, Christopher of course was previously convicted in 15 Cr. 607 for participating in a multi-year racketeering conspiracy, conduct which entailed distributing crack cocaine with a street gang and possessing a firearm in relation to those drug trafficking activities. PSR ¶ 24. This conduct suggests that Christopher's instant offense was not a one-time transgression.

That Christopher committed the present offense while on supervised release for his racketeering conspiracy conviction, *see* PSR ¶ 26, further suggests that his previous time in federal custody did not deter him from continuing to engage in the same sort of conduct which led to that prior incarceration. Similarly, committing the supervised release violations while subject to court-ordered supervision reflects a continued need to promote respect for the law. For similar reasons,

11

Christopher's aforementioned infractions during his current incarceration, including two for assault, likewise suggest an ongoing need for deterrence and to promote respect for the law.

Christopher's arguments to the contrary are unavailing. The Court considered many of the Section 3553(a)-related arguments he now presents when sentencing him in 22 Cr. 61 and 15 Cr. 607. *See United States v. Cueto*, No. 11 Cr. 1032 (PAE), 2021 WL 621188, at *4 (S.D.N.Y. Feb. 17, 2021) (explaining, in denying a motion for compassionate release, that "the Court, in imposing sentence, already considered [the movant]'s youth at the time of the offense and at least some of his rehabilitative steps"). For example, Christopher points to his difficult upbringing and contends that the conditions in his neighborhood led to his commission of this offense, Motion at 4-5, but as Christopher himself acknowledges, "[t]he Court is well aware of [his] background," *id.* at 4. Indeed, at sentencing the Court observed: "There's no question Mr. Christopher experienced a very difficult upbringing. It appears that his mother suffered from addiction at points. He spent time under the care of the New York City Administration for Children's Services. He certainly appears to have an extensive history of substance abuse." Sentencing Tr. at 46:12-16. These circumstances of Christopher's background and characteristics, which were fully considered at sentencing, do not merit a change to the Court's prior determination.

While Christopher claims to "understand[] the seriousness of the offense" and insists that he has matured since he engaged in that activity, Motion at 5-6, his conduct while incarcerated suggests otherwise, *see supra* III.A.2. And while, as noted, the Court commends Christopher for availing himself of the BOP's programming, Motion at 6-7, those actions do not allay the Court's serious public safety concerns with early release from custody. *See Bennett*, 2022 WL 3445349, at *4 ("While Bennett has enrolled in the RDAP and GED programs while in prison, Bennett's long criminal history combined with Judge Nathan's below-Guidelines sentence counsel against

releasing him."); *United States v. Acosta-Martinez*, Nos. 12 Cr. 63 (JFB), 15 Cr. 87 (JFB), 2023 WL 3628589, at *3 (E.D.N.Y. May 24, 2023) (denying a motion for compassionate release because the Section 3553(a) factors overwhelmed the movant's use of the BOP's programming and personal growth). Nor has Christopher presented any reason for the Court to conclude that continued service of the imposed sentence, which entailed a Guidelines sentence in 22 Cr. 61 and a consecutive substantially below-Guidelines sentence in 15 Cr. 607, would create unwarranted sentence disparities for purposes of Section 3553(a)(6). *See* Motion at 7 (arguing that early release would not present unwarranted sentence disparities because there are no co-defendants in 22 Cr. 61 and because Christopher "has served over half of his prison sentence").

### IV. Conclusion

For the above reasons, Christopher's motion for compassionate release is denied. The Clerk of Court is respectfully directed to close Docket Number 32.

SO ORDERED.

Dated: November 7, 2024
New York, New York

JOHN P. CRONAN
United States District Judge